IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT CAVAZOS,<br><br>  Plaintiff,<br><br>  v.<br><br>E. GRAJEDA, et al.,<br><br>  Defendants. | No. 2:24-CV-0457-DMC-P<br><br><br>ORDER<br><br>and<br><br>FINDINGS AND RECOMMENDATIONS |

    Plaintiff, a prisoner proceeding pro se, brings this civil rights action pursuant to 42 U.S.C. § 1983.  Pending before the Court is the motion to dismiss filed by Defendants McKean, Trevino, Aldredge[1], Damacion, Grajeda, Becerra, and Gardner. See ECF No. 14. Plaintiff has filed an opposition. See ECF No. 17.  Defendants have filed a reply. See ECF No. 18.

    In considering a motion to dismiss, the Court must accept all allegations of material fact in the complaint as true.  See Erickson v. Pardus, 551 U.S. 89, 93-94 (2007).  The Court must also construe the alleged facts in the light most favorable to the plaintiff.  See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); see also Hosp. Bldg. Co. v. Rex Hosp. Trustees, 425 U.S. 738, 740 (1976); Barnett v. Centoni, 31 F.3d 813, 816 (9th Cir. 1994) (per curiam).  All

---

[1]   Defendant Aldredge is erroneously named as Defendant "Aldrige."

1

ambiguities or doubts must also be resolved in the plaintiff's favor. See Jenkins v. McKeithen, 395 U.S. 411, 421 (1969). However, legally conclusory statements, not supported by actual factual allegations, need not be accepted. See Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949-50 (2009). In addition, pro se pleadings are held to a less stringent standard than those drafted by lawyers. See Haines v. Kerner, 404 U.S. 519, 520 (1972).

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atl. Corp v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). However, in order to survive dismissal for failure to state a claim under Rule 12(b)(6), a complaint must contain more than "a formulaic recitation of the elements of a cause of action;" it must contain factual allegations sufficient "to raise a right to relief above the speculative level." Id. at 555-56. The complaint must contain "enough facts to state a claim to relief that is plausible on its face." Id. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Twombly, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility for entitlement to relief." Id. (quoting Twombly, 550 U.S. at 557).

In deciding a Rule 12(b)(6) motion, the Court generally may not consider materials outside the complaint and pleadings. See Cooper v. Pickett, 137 F.3d 616, 622 (9th Cir. 1998); Branch v. Tunnell, 14 F.3d 449, 453 (9th Cir. 1994). The Court may, however, consider: (1) documents whose contents are alleged in or attached to the complaint and whose authenticity no party questions, see Branch, 14 F.3d at 454; (2) documents whose authenticity is not in question, and upon which the complaint necessarily relies, but which are not attached to the complaint, see Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001); and (3) documents and materials of which the court may take judicial notice, see Barron v. Reich, 13 F.3d 1370, 1377 (9th Cir.

1994).

Finally, leave to amend must be granted "[u]nless it is absolutely clear that no amendment can cure the defects." Lucas v. Dep't of Corr., 66 F.3d 245, 248 (9th Cir. 1995) (per curiam); see also Lopez v. Smith, 203 F.3d 1122, 1126 (9th Cir. 2000) (en banc).

## I. BACKGROUND

### A. Plaintiff's Allegations

Plaintiff names the following as defendants: (1) E. Grejada, Correctional Officer; (2) F. Trevino, Correctional Officer; (3) Via de Luz, Registered Nurse; (4) Swain, Correctional Officer, (5) D. McKean, Correctional Officer; (6) D. Damacion, Correctional Officer; (7) Becerra, Correctional Officer; (8) Aldrige, Medical Doctor; and (9) Goth, Correctional Officer. See ECF No. 1, pgs. 1, 2. The complaint also lists several fictitiously named "Doe" defendants. See id. The events alleged in the complaint occurred at the California Medical Facility (CMF). See id. at 1.

Plaintiff alleges that, on May 5, 2023, Defendant Grejada stood one foot away from Plaintiff as he let another inmate, Flores, out of the dayroom to continue yelling and threatening Plaintiff. See id. at 5. Plaintiff next states that, after inmate Flores had been yelling at Plaintiff for 45 seconds, Defendant Grejada forced Plaintiff to go back into the dayroom with inmate Flores while Grejada stood in the open doorway and watched as inmate Flores beat Plaintiff. See id. Plaintiff states that Defendant Grejada allowed inmate Flores to attack him for one minute without intervening. See id. The attack didn't stop until two other inmates intervened. See id. Plaintiff next claims that, following the attack by inmate Flores, Defendant Grejada ordered that Plaintiff be handcuffed and forced Plaintiff to walk on a fractured ankle to the nurse's booth 25 feet away. See id. According to Plaintiff, Defendant Grejada then influenced the nurse to deny Plaintiff emergency medical attention. See id. Instead, Defendant Grejada ordered Plaintiff back to his cell where he remained for the next 20 hours without medical attention. See id. Plaintiff states that he screamed in pain and pled for help during this time. See id. Finally, Plaintiff claims Defendant Grejada falsified a rules violation report. See

3

id.

Plaintiff next claims that Defendant Trevino also allowed inmate Flores to assault him on May 5, 2023.  See id. at 6.  Plaintiff alleges that, after the two other inmates intervened to stop the attack, Defendant Trevino swiped at Plaintiff's ankle causing Plaintiff to fall to the floor.  See id.  After this, Defendant Trevino handcuffed Plaintiff and forced Plaintiff to walk on his fractured ankle to the nurse's booth.  See id.  According to Plaintiff, Defendant Trevino then instructed the nurse not to see Plaintiff or send him to medical.  See id.  Defendant Trevino then sent Plaintiff back to his cell without medical treatment.  See id.  Plaintiff also alleges that Defendant Trevino falsified a rules violation report.  See id.

Next, Plaintiff claims that he was seen by Defendant Via de Luz, a prison nurse, on May 5, 2023, following the assault by inmate Flores.  See id. at 7.  According to Plaintiff, he had been knocked unconscious, had a fractured nose and ankle, lumps on his head, and swollen eyes.  See id.  Plaintiff alleges that Defendant Via de Luz refused to send him to the emergency medical clinic.  See id.  Plaintiff claims that, instead, Defendant Via de Luz diminished Plaintiff's injuries in the report provided to prison doctors.  See id.  Plaintiff also claims that Defendant Via de Luz accepted "unethical influence" by Defendants Grejada and Trevino.  Id.  Plaintiff again asserts that he was forced to wait 20 hours for emergency medical attention, all the while in severe pain.  See id.

Plaintiff alleges that Defendant Swain stood idly by on May 5, 2023, when he was attacked by inmate Flores.  See id. at 9.

Plaintiff claims that, on May 18, 2023, Defendant McKean opened Plaintiff's cell door and "in one swift kick, he hit my stomach. . . ."  Id. at 14.  Next, Plaintiff asserts that, on June 21, 2023, as Plaintiff sat on his walker and pushed himself with one foot, Defendant McKean threatened Plaintiff and told him to stand "so I could knock your ass out and I'll break your other leg. . . ."  According to Plaintiff, Defendant McKean then kicked his fractured ankle and then told Plaintiff to get up or he would break Plaintiff's other foot.  See id.  Plaintiff also alleges that, on October 6, 2023, Defendant McKean allowed two inmates to have an "underground fight" and told Plaintiff and other inmates to "jump in" and help attack inmate

4

1  Tatum because Tatum is a sexual predator. Id.

2  Next, Plaintiff alleges that, on May 18, 2023, Defendant Damacion failed to
3  protect Plaintiff. See id. at 15. According to Plaintiff, Defendant Damacion conspired with
4  Defendant McKean to break prison policy and unlock Plaintiff's cell door, threaten Plaintiff, and
5  allow Defendant McKean to kick Plaintiff. See id. Plaintiff claims that, following this,
6  Defendant Damacion refused to allow Plaintiff access to the recreational yard and then falsely
7  reported to the prison psychiatrist. See id. Plaintiff adds that, on June 21, 2023, Defendant
8  Damacion threatened Plaintiff, mocked him, and encouraged Defendant McKean to assault him.
9  See id.

10  Plaintiff next claims that, on May 18, 2023, Defendant Becerra "encouraged and
11  mocked as McKean opened my door and kicked me." Id. at 16.

12  Plaintiff alleges that, on May 18, 2023, Defendant Aldrige, a prison doctor,
13  "allowed custody to reassign me out of the disability housing assignment living quarter room (my
14  cell) into another living quarter cell, which was not a disability nor ADA grip bars/sink." Id. at
15  16-17. And, "contrary to FDA oral medications," Defendant Aldrige "ordered and affirmed the
16  crushing to fine powder Tylenol III codeine." Id. at 17. According to Plaintiff, Defendant
17  Aldrige did this "disregarding my complaint of the bitterness of taking the meds as such, and
18  losing the prescribed dosage daily. . . ." Id. Plaintiff claims Defendant Aldrige did this again on
19  June 21, 2023, just 14 hours following surgery. See id.

20  Next, Plaintiff alleges that, on August 1, 2023, Defendant Aldrige "prematurely
21  and intentionally ordered the removal of my cast and said start putting some wait [sic] on your
22  ankle with the special medical boot I'll give you," but Plaintiff was not provided any special
23  medical boot. Id. at 17-18. By August 12, 2023, Defendant Aldrige discontinued Plaintiff's
24  prescription for Tylenol III codeine. See id. at 18. By August 24, 2023, Defendant Aldrige
25  ordered full weight-bearing. See id. at 18. Defendant Aldrige also rescinded Plaintiff's
26  permission for use of the walker and instead provided Plaintiff a cane. See id. According to
27  Plaintiff, he fell in the shower on September 1, 2023, while using the cane. See id. Plaintiff
28  states that he informed Defendant Aldrige following this fall that it was difficult for him to

maneuver in an out of the shower with the cane. See id. Plaintiff further states that Defendant Aldrige "disregarded my complaint and the science of my fracture and recovery." Id.

By October 2023, Plaintiff refused to see Defendant Aldrige any further but that, despite this, Defendant Aldrige came to Plaintiff's cell and "ignored him with complete silence." According to Plaintiff, Defendant Aldrige stared at Plaintiff's genitals and said, "I could see you are not black (note Doctor Aldrige is African American); Oh, and you are uncircumcised." Id. at 19.

Finally, Plaintiff claims that Defendant Goth falsified a rules violation report issued against Plaintiff following the May 5, 2023, incident. See id. at 20.

### B. Procedural History

On March 13, 2023, the Court issued a screening order addressing the sufficiency of Plaintiff's complaint and finding that service was appropriate as to Plaintiff's excessive force, medical care, and due process claims against all named defendants. See ECF No. 8. Defendants McKean, Trevino, Becerra, Aldredge, Damacion, Grajeda, and Gardner waived service and filed the pending motion to dismiss on June 17, 2024. See ECF No. 14. Service of process was returned unexecuted as to Defendants Goth and Via de Luz on June 21, 2024. See ECF Nos. 15 and 16.

## II. DISCUSSION

In their motion to dismiss, Defendants argue that Plaintiff's allegations are insufficient to state a due process claim. ECF No. 14. More specifically, Defendants contend: (1) Plaintiff's due process claim does not comply with Federal Rule of Civil Procedure 8; and (2) the complaint fails to state facts upon which a due process claim can be granted.[2] For the reasons discussed below, the Court agrees with Defendants that, as currently pleaded, the complaint is deficient as to Plaintiff's due process claim. The Court will, however, recommend that Plaintiff be granted leave to amend.

---

[2] Defendants raise no argument as to other claims identified in the Court's screening order.

6

The Federal Rules of Civil Procedure require that complaints contain a ". . . short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This means that claims must be stated simply, concisely, and directly. See McHenry v. Renne, 84 F.3d 1172, 1177 (9th Cir. 1996) (referring to Fed. R. Civ. P. 8(e)(1)). These rules are satisfied if the complaint gives the defendant fair notice of the plaintiff's claim and the grounds upon which it rests. See Kimes v. Stone, 84 F.3d 1121, 1129 (9th Cir. 1996). Because Plaintiff must allege with at least some degree of particularity overt acts by specific defendants which support the claims, vague and conclusory allegations fail to satisfy this standard.

Consistent with these pleading standards, to state a due process claim Plaintiff must allege the existence of a liberty or property interest for which the protection is sought. See Ingraham v. Wright, 430 U.S. 651, 672 (1977); Bd. of Regents v. Roth, 408 U.S. 564, 569 (1972). Due process protects against the deprivation of property where there is a legitimate claim of entitlement to the property. See Bd. of Regents, 408 U.S. at 577. Protected property interests are created, and their dimensions are defined, by existing rules that stem from an independent source – such as state law – and which secure certain benefits and support claims of entitlement to those benefits. See id.

Liberty interests can arise both from the Constitution and from state law. See Hewitt v. Helms, 459 U.S. 460, 466 (1983); Meachum v. Fano, 427 U.S. 215, 224-27 (1976); Smith v. Sumner, 994 F.2d 1401, 1405 (9th Cir. 1993). In determining whether the Constitution itself protects a liberty interest, the court should consider whether the practice in question ". . . is within the normal limits or range of custody which the conviction has authorized the State to impose." Wolff, 418 U.S. at 557-58; Smith, 994 F.2d at 1405. Applying this standard, the Supreme Court has concluded that the Constitution itself provides no liberty interest in good-time credits, see Wolff, 418 U.S. at 557; in remaining in the general population, see Sandin v. Conner, 515 U.S. 472, 485-86 (1995); in not losing privileges, see Baxter v. Palmigiano, 425 U.S. 308, 323 (1976); in staying at a particular institution, see Meachum, 427 U.S. at 225-27; or in remaining in a prison in a particular state, see Olim v. Wakinekona, 461 U.S. 238, 245-47 (1983).

///

7

In determining whether state law confers a liberty interest, the Supreme Court has adopted an approach in which the existence of a liberty interest is determined by focusing on the nature of the deprivation. See Sandin v. Connor, 515 U.S. 472, 481-84 (1995). In doing so, the Court has held that state law creates a liberty interest deserving of protection only where the deprivation in question: (1) restrains the inmate's freedom in a manner not expected from the sentence; and (2) "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id. at 483-84. Prisoners in California have a liberty interest in the procedures used in prison disciplinary hearings where a successful claim would not necessarily shorten the prisoner's sentence. See Ramirez v. Galaza, 334 F.3d 850, 853, 859 (9th Cir. 2003) (concluding that a due process challenge to a prison disciplinary hearing which did not result in the loss of good-time credits was cognizable under § 1983); see also Wilkinson v. Dotson, 544 U.S. 74, 82 (2005) (concluding that claims which did not seek earlier or immediate release from prison were cognizable under § 1983).

Defendants argue:

> . . .Under Rule 8(a), Plaintiff's twenty-one-page-long complaint (Complaint) fails to give Defendants sufficient, fair notice of Plaintiff's due process claim and its underlying grounds. The Complaint does not name a due process violation as a separate cause of action. It does not allege any Defendant's conduct violated the Due Process Clause. Nor does it request a relief based on an alleged due process violation.

ECF No. 14-1, pg. 1.

Defendants further contend that "Plaintiff's Complaint fails to allege sufficient facts to support a due process claim [under Rule 12(b)(6)] because Plaintiff never identifies any liberty or property interest, whose deprivation imposed an atypical and significant hardship outside the ordinary realms of prison life." Id. at 2.

Plaintiff argues "Plaintiff has intertwined the infringement (by deliberate indifference) of the 8th and 14th, and the 1st Amendment" allegations. See ECF No. 17 at 3. Plaintiff also argues Defendants failed to deny Plaintiff's allegations under Federal Rule of Civil Procedure 8(a) because Defendants filed this motion to dismiss. See id. Plaintiff additionally alleges new facts in his opposition, including four occasions in which Plaintiff had a "hearing."

8

See id. at 6-7.

In reply, Defendants argue Plaintiff's opposition continues to fail to establish a plausible claim of a due process violation because Plaintiff's "complaint does not name a due process violation as a separate cause of action" and Plaintiff's opposition "repeatedly concedes that he [Plaintiff] only intended to bring one claim of medical deliberate indifference under the Eighth Amendment." See ECF No. 18 at 1-2. Moreover, "Defendants have not waived their right to admit or deny Plaintiff's allegations by strategically filing a Rule 12(b) motion over an answer." See id.

This Court agrees with Defendants and finds Plaintiff's allegations are insufficient to state a due process claim. Plaintiff argues his due process violation claim is intertwined with his medical deliberate indifference claim. However, Plaintiff has failed to allege facts which explain how Defendants' alleged actions have adversely affected his liberty interests. As noted above, a change in a prisoner's confinement that imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life" may give rise to a due process claim. See Sandin, 515 U.S. at 483-84. Here, it is unclear what deprivation or injury Plaintiff alleges to have suffered in relation to Defendants alleged actions, or how these actions imposed an "atypical and significant hardship" outside the ordinary realms of prison life. Id. As such, Plaintiff has not properly articulated a due process claim. Plaintiff should be granted leave to amend.

///
///
///
///
///
///
///
///
///

9

### III.  CONCLUSION

Based on the foregoing, the undersigned orders and recommends as follows:

1. It is ORDERED that the Clerk of the Court is directed to randomly assign a District Judge to this case.

2. It is RECOMMENDED that Defendants' motion to dismiss, ECF No. 14, be GRANTED, Plaintiff's due process claim be DISMISSED, and Plaintiff be provided an opportunity to amend as to his due process claim or proceed on the original complaint as to the otherwise cognizable claims.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 14 days after being served with these findings and recommendations, any party may file written objections with the court.  Responses to objections shall be filed within 14 days after service of objections.  Failure to file objections within the specified time may waive the right to appeal.  See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  September 20, 2024

DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE